## Commonwealth ex rel. Kelley *v.* Sheridan et al., Appellants.

416

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Argued April 14, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harry E. Kalodner,* for appellant in No. 239.

*Lemuel B. Schofield,* for appellant in No. 246.

*Robert T. McCracken,* with him *Warwick Potter Scott,* for appellee.

PER CURIAM, April 18, 1938:
A majority of the Judges are of the opinion that the judgment of ouster must be affirmed. An opinion will be filed in due course stating the reason for this conclusion.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 17, 1938:
The Act of the 28th of April, 1937, P. L. 476, fixes the number, qualifications, terms, manner of appointment and organization of the Board of Revision of Taxes in counties of the first class. A separate Act of the same day and year, P. L. 472, names the offices who shall appoint the members of this Board as follows: The County Treasurer is required to appoint one member who is an attorney, one member who is a construction engineer and one member who is a real estate appraiser. The County Controller is required to select one member who is an attorney, one member who is a civil engineer and one member who is a real estate broker. One member who is required to be a business man, an accountant, or teacher in a recognized college or university, specializing in any of the subjects therein prescribed, is to be appointed by the County Treasurer and the County Controller acting jointly.

When the first-named Act was before this Court for consideration it was held that the members of the Board then in office, selected by the Board of Judges under prior legislation, were not disturbed and continued as officers of the Board: *Suermann et al. v. Hadley,* 327 Pa. 190. To complete the legislative intent, the County Treasurer and the County Controller, under the Act of 1937, were ordered to select the remaining members of the enlarged Board. This was done, and Messrs. Breit-

inger and Byles were appointed as members of the Board of Revision of Taxes by County Treasurer Hadley. After the first Monday of January, 1938, these appointees were dismissed by County Treasurer Harr, and appellants, Sheridan and Shovlin, were appointed as their successors. The appointment of Sheridan and Shovlin was challenged in a quo warranto proceeding, the allegation being that Breitinger and Byles were unlawfully removed by Harr. The court below sustained this view and ousted the new appointees from office. On appeal to this Court it is contended that the court below erred in ousting these members because the power that appointed Breitinger and Byles, the County Treasurer, had the right to remove them in accordance with Article VI, Section 4, of the Constitution, which reads: "All officers may be removed at the pleasure of the power by which they shall have been appointed."

The sole question before us is, where was the appointive power? These Acts of Assembly, enlarging, reorganizing and providing for the selection of members of the Board of Revision of Taxes, create a most peculiar appointive power, one never before brought to the attention of any member of this Court. We doubt very much whether it has a counterpart in the laws of this or any other State. What the legislature was endeavoring to accomplish by these Acts, as stated in our former opinion, was to comprehensively reorganize an existing system of government. The reorganized body is, as it was before, a distinct entity upon which devolve many duties which, of their nature, contemplate continuous action by the Board as a unit; duties not individual but collective, requiring joint action of the entire body. These duties in some instances are quasi-judicial in nature; for example, the members sit as viewers in condemnation cases. Their functions concern valuable property rights, and are part of the machinery by which the city is empowered to secure the revenue necessary to carry on the affairs of government.

When the Acts went into effect, there was a Board functioning under appointment by the Board of Judges. The judges, with the County Controller individually, the County Treasurer individually, and a combination of the latter two, constituted collectively the appointive *power* of the enlarged Board. Neither the County Controller nor the County Treasurer alone could fill the Board of Revision, which was the office. It required the collective efforts of all agencies exercising appointive selection to appoint the Board.

When the framers of the Constitution used the words *"the power* by which they shall have been appointed" they were contemplating a single power to fill an office, here the Board of Revision, though the power might be exercised by two or more agents or appointers contributing jointly or severally to the ultimate result. The exercise of the power may be divisible, but it is nevertheless a single power. When appointment takes place under these circumstances, the segments of power are brought together as the power exercised by each office in compliance with the legislative intent, that is, the power of appointing the Board of Revision of Taxes. Giving to the Constitution its full effect, the power of removal must be the same power, namely, the joinder of all of the elements or parts of the appointive power. When these men are chosen by several appointive offices or agencies, qualify and take their places on the Board, they are not the individual representatives of the several offices. Their individuality as reflected by the particular office which selects them disappears and is merged into membership in the Board. It is then the Board that is acting, and when the Board with the four members added under the recent Act is to be broken down, by removals, if that is possible, it requires the action of the whole appointive power made up of the several segments or elements. At this time, taking the Board as a whole, part of the appointive power was exercised by the judges by virtue of prior laws.

What we hold is that while the individual offices severally make up the appointing power, when that power is once exercised and the appointees are installed, they lose their character as appointees of the individual offices and become the objects of the entire appointive power, which means the consolidation of all the elements of which it is composed. To remove these members from the Board requires the joint action of this appointive power. Without the action of all of these factors, any attempted removal by one of them is abortive.

To make this difficult piece of legislation workable, under a logical construction of the legislation and this Article of the Constitution, in view of the character of the duties that devolve upon these members, and to preserve the efficient existence of this important arm of city government as intended by the legislature, we find this to be the only sensible and possible interpretation. When the appointive power is divisible into several component elements and one of these elements alone acts, this does not make up the Board, nor is it a full exercise of the power. It requires the joinder of all the elements of the appointive power to make up the whole body of the Board of Revision of Taxes. It must follow, therefore, that the power that appoints, in so far as removal is concerned, under the Constitutional provision that appointed officers may be removed at the pleasure of the power that appointed, must be all the elements of that power joined into one single operating factor.

It does not require elaborate illustration to show what an absurd result would follow if any other conclusion were adopted. Instead of empowering the board of judges to appoint the board of education, suppose each judge should be authorized to appoint a member. Would that individual judge have the right to remove "his man" within the protection of the Constitution? We think not. It is evident that the Constitution was not intended to cover a conglomerate assortment of parts of an appointive power so divided, to fill an harmonious

body working as a unit, when removal is in question. One judge could not alone exercise the power of removal.

Appellants argue vigorously that the whole framework of our system and form of government would be imperiled if Article VI, Section 4, of the Constitution were not strictly construed and rigorously and literally applied to the present case. This challenge is met and its requirements fulfilled by giving to the words "the *power* by which they shall have been appointed," a group or collective signification, having in mind that the Board of Revision of Taxes functions as an entity and not as isolated, mutually independent, individuals, and that therefore we must look to the "power" which appoints the *Board* rather than to the segments or portions of that "power" which selects its individual members.

We might, indeed, have gone further and searched for the spirit and reason, rather than the letter, of the constitutional provision, and, had we done this, might well have come to the conclusion that Article VI, Section 4 was not meant to apply to a situation such as that created by the legislation here under review. It is obvious that the main constitutional purpose was to allow officials to dismiss at pleasure the subordinates whom they had appointed, and thus be able to have under them at all times persons who would carry out their policies and directions loyally and efficiently. But here, while the functions and acts of the Board of Revision of Taxes are of a quasi-judicial nature and normally and naturally, therefore, subject to the review and supervision of the courts, they in no way lend themselves to control by the City Treasurer and City Controller who are at best ministerial or administrative officers. Any reason, therefore, for vesting in these officials individually the power of removing members of the Board of Revision of Taxes, even if the legislature in its wisdom has seen fit to invest them with the function of designating some of

its members, is not so apparent as to lead to the conviction that the Constitution was meant to apply to the novel situation thus created, especially while the Board still includes appointees of the judges. And in construing the Constitution it is the spirit rather than the letter which should govern. However, we do not mean to rest our decision upon any such broader ground, but purely upon the interpretation to be given to the word "power," viewed from all necessary angles of common sense, reasonableness and practicability.

The order in this case, affirming the judgment and decree of the court below, has been filed.

Mr. Justice BARNES dissents.